IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

05 FEB 17 PH 1:05

OFFICE OF THE CLERK

| | |
|---|---|
| DAMROW FARMS, a General Partnership, | ) CASE NO. 4: 05CV3044 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **NOTICE OF REMOVAL** |
| | ) **AND REQUEST FOR PLACE** |
| FIRST NATIONAL BANK OF HOLDREGE, | ) **OF TRIAL** |
| KENNETH SLOMINSKY, ERIC TITUS, | ) |
| RONALD STERR, TIM WIEBE, JEANETTE | ) |
| HARDEN, KIRK RILEY, MARK UTTER, | ) |
| and DOUGLAS SCOTT LATTER, | ) |
| | ) |
| Defendants. | ) MAGISTRATE JUDGE |
| | ) PIESTER |

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA:

Defendants, First National Bank of Holdrege ("FNBH"), Eric Titus ("Titus"), Douglas
Scott Latter ("Latter"), Kenneth Slominski ("Slominski"), Ronald Sterr ("Sterr"), Tim Wiebe
("Wiebe"), Jeanette Harden ("Harden"), Kirk Riley ("Riley"), and Mark Utter
("Utter")(collectively the "Defendants") hereby file their Notice of Removal of this action from
the District Court of Phelps County, Nebraska, and state as follows:

1.     The Defendants are all of the defendants in Civil Action No. CI04-212 filed on
December 23, 2004, in the District Court of Phelps County, Nebraska.  Pursuant to the
provisions of 28 U.S.C. §§ 1441 and 1446, the Defendants remove this action to the United
States District Court for the District of Nebraska, which is the judicial district in which the action
is pending.

2.     All of the Defendants in this action join in filing this Notice of Removal.

3.     The grounds for removal of this action are as follows:

a.      This is an action of a civil nature over which this Court would have original jurisdiction under 28 U.S.C. § 1331 in that it arises under the laws of the United States within the meaning of that statute.

b.      In addition, the Plaintiff alleges that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") at 18 U.S.C. § 1961 *et seq.* Accordingly, this Court would have original jurisdiction over this action pursuant to 18 U.S.C. § 1964(c).

c.      The other grounds for relief asserted by the Plaintiff in its action all arise out of the same set of facts and are part of the same case and controversy, so that this Court has supplemental jurisdiction over them within the meaning of 28 U.S.C. § 1367(a).

Therefore, this is an action over which this Court would have had original jurisdiction had it been filed initially in this Court and removal to this Court is proper under the provisions of 28 U.S.C. § 1441(a) and/or (b).

4.      The Complaint and Jury Demand was filed by the Plaintiff in the District Court of Phelps County, Nebraska, on December 23, 2004.  Plaintiff filed its Amended Complaint and Jury Demand in the District Court of Phelps County, Nebraska, on January 24, 2005.  Plaintiff's Second Amended Complaint and Jury Demand was filed in the District Court of Phelps County, Nebraska, on February 11, 2005.  Service was effected on the Defendants on the following dates: Slominski and Harden, February 11, 2005; Wiebe and Utter, February 14, 2005; and Riley, FNBH, Titus, Latter, and Sterr, February 16, 2005.

5.      None of the Defendants in this action were served with process prior to February 11, 2005.

6.     This Notice of Removal is filed within thirty (30) days of the date that any Defendant in this action first received the Complaint "by service or otherwise" within the meaning of 28 U.S.C. § 1446(b), and it is therefore timely under 28 U.S.C. § 1446(b)

7.     Pursuant to the provisions of 28 U.S.C. § 1446(a), the Defendants attach to this Notice of Removal and incorporate by reference copies of the following papers, which are all of the process, pleadings and orders served on or filed by them prior to their removal of this action:

a.     The Plaintiff's Complaint and Jury Demand filed on December 23, 2004, in the District Court of Phelps County, Nebraska, Case No. CI04-212, which is marked as Exhibit "A."

b.     The Plaintiff's Amended Complaint and Jury Demand filed on January 24, 2005, in the District Court of Phelps County, Nebraska, Case No. CI04-212, which is marked as Exhibit "B."

c.     The Plaintiff's Second Amended Complaint and Jury Demand filed on February 11, 2005, in the District Court of Phelps County, Nebraska, Case No. CI04-212, which is marked as Exhibit "C."

d.     The Voluntary Appearances of FNBH, Titus, Latter, and Sterr served on February 16, 2005, and filed in the District Court of Phelps County, Nebraska, Case No. CI04-212, which are marked as Exhibits "D" through "E."

e.     The various Summonses served on Slominski, Wiebe, Harden, Riley, and Utter, which are marked as Exhibits "F" through "J."

8.     Written notice of the filing of this Notice of Removal will be served on counsel for Plaintiff as required by law.

3

9.     A true and correct copy of this Notice of Removal will be filed with the Clerk of the District Court of Phelps County, Nebraska, as required by law, and served upon counsel for the Plaintiff.

## REQUEST FOR PLACE OF TRIAL

Defendants request that the trial of this matter be at Lincoln, Nebraska.


WHEREFORE, Defendants, First National Bank of Holdrege, Eric Titus, Douglas Scott Latter, Kenneth Slominski, Ronald Sterr, Tim Wiebe, Jeanette Harden, Kirk Riley, and Mark Utter request that this case be removed from the District Court of Phelps County, Nebraska, where it is now pending, to this Court, and that this Court accept jurisdiction of this action and that this action be placed upon the docket of this Court for further proceedings as if the case had been originally instituted in this Court.

DATED this 17th day of February, 2005.

4

FIRST NATIONAL BANK OF HOLDREGE,
ERIC TITUS, DOUGLAS SCOTT LATTER,
JEANETTE HARDEN, KIRK RILEY and
MARK UTTER, Defendants


By: /s/ Matthew W. Lytle
    William F. Hargens, NE #16578
    Robert J. Bothe, NE #15018
    James J. Niemeier, NE #18838
    Matthew W. Lytle, NE #22928
    McGrath North Mullin & Kratz, PC LLO
    Suite 3700 First National Tower
    1601 Dodge St.
    Omaha, Nebraska 68102
    (402) 341-3070
    (402) 341-0216 fax
    whargens@mnmk.com
    rbothe@mnmk.com
    jniemeier@mnmk.com
    mlytle@mnmk.com

*Attorneys for Defendants First National Bank of Holdrege, Eric Titus and Douglas Scott Latter*

*Attorneys for Defendants Jeanette Harden, Mark Utter and Kirk Riley for Purposes of This Filing Only*

RONALD     STERR,   and   TIM   WIEBE,
Defendants


By:/s/ Timothy A. Shultz
      Timothy A. Shultz (#22533)
      Parker & Hay, LLP
      1129 S.W. Wanamaker Road
      Topeka, Kansas  66605
      (785) 228-5736




KENNETH SLOMINSKI, Defendant


By: /s/ Claude E. Berreckman, Jr.
      Claude E. Berreckman, Jr. (#17049)
      Berreckman & Berreckman, P.C.
      801 Meridian Avenue
      P.O. Box 214
      Cozad, Nebraska  69130-0214
      (308) 784-2040

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the following listed below by United States mail, postage prepaid, this 17th of February, 2005.

Steven P. Vinton
BACON & VINTON, LLC
416 10th Street
P.O. Box 208
Gothenburg, NE  69138

P. Stephen Potter
P. STEPHEN POTTER, P.C.
822 Lake Avenue
P.O. Box 348
Gothenburg, NE  69138

/s/ Matthew W. Lytle
Matthew W. Lytle

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| DAMROW FARMS, a General Partnership | CASE NO. CI04- 212 |
| Plaintiff, | |
| vs. | COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER and DOUGLAS SCOTT LATTER, | |
| Defendants. | |

COMES NOW Damrow Farms (herein "Plaintiff"), by and through its attorneys Bacon &

Vinton, L.L.C. and P. Stephen Potter, PC, and for its Complaint against the Defendants and each

of them, states and alleges as follows:

### PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE

1.      Plaintiff is a general partnership with its principal place of business in Phelps

County, Nebraska.

2.      First National Bank of Holdrege (hereafter "FNB Holdrege") is a national

banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB

Holdrege has acted through its officers and agents, including, Defendants Kenneth Slominsky,

Eric Titus, Ronald Sterr, Tim Wiebe, Jeanette Harden, Kirk Riley, and Mark Utter.

3.      Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is

named in his former capacity and individually.

4.      Eric Titus ("Titus") is a current officer and director of FNB Holdrege and is

named in this capacity and individually.

FILED

DEC 23 2004



L. NELSON

EXHIBIT "A"

PENGAD-Bayonne, N.J.

5.      Ronald Sterr ("Sterr") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.      Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.      Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

8.      Kirk Riley ("Riley") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

9.      Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

10.     Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

11.     D.F.F., Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers. FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

12.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

## FACTS COMMON TO ALL CLAIMS

13.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and cattle owned by third parties.

14.     In and about 1997, FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

15.     In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

16.     On or about April 14, 2000, at the request and inducement of FNB Holdrege, FNB Omaha refinanced FNB Holdrege's loan to Damrow Cattle and Damrow Finance (hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan"). As part of the conditions imposed by FNB Omaha to refinance Damrow Cattle and Damrow Finances debt to FNB Holdrege, FNB Omaha required that the indebtedness of Damrow Cattle be reduced. To raise capital to reduce its indebtedness, Damrow Cattle requested that Plaintiff lend money to it for application to its indebtedness to FNB Holdrege. Pursuant to such request, Damrow Farms sold real estate and crops owned by it, and loaned the sum of $2,200,382.25 to Damrow Cattle. The amount so loaned was then utilized by Damrow Cattle to pay off a bridge note made by FNB Omaha as part of its refinancing of the indebtedness of Damrow Cattle to FNB Holdrege, and to reduce other indebtedness of Damrow Cattle to FNB Omaha refinanced from FNB Holdrege. The loans made by the Plaintiff were evidenced by written documents, payable on demand, and Plaintiff has not previously made demand for repayment of such loans.

17.     At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow Cattle loans, FNB Holdrege represented to Damrow Cattle that FNB Omaha would continue to provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle entered into agreements to purchase wet corn and dry corn from various producers of corn, including Plaintiff.

18.     In inducing the FNB Omaha/Damrow Cattle Take Out Loan, FNB Holdrege intentionally provided commercial information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle financing would be given to and relied upon by third parties, including Plaintiff. Plaintiff was reasonably entitled to rely upon FNB Holdrege's commercial information.

19.     At all times material, FNB Holdrege knew about, coordinated and actively arranged the making of the FNB Omaha/Damrow Cattle Take Out Loan.

20.     On January 11, 2001, within 8 months of making the FNB Omaha/Damrow Cattle Take Out Loan, FNB Omaha withdrew its loan commitment to Damrow Cattle and Damrow Cattle was placed in receivership by the District Court of Phelps County, Nebraska. At the time such receivership was filed, Plaintiff became aware that Damrow Cattle may be unable to perform under its contracts with Plaintiff for the purchase of corn, and that Damrow Cattle may be unaware to repay its loans from Plaintiff.

21.     Upon information and belief, both prior to and on January 11, 2001, FNB Holdrege and Defendants Slominsky, Titus, Sterr, Wiebe, Harden, Riley, Utter and Latter knew, participated and otherwise organized a fraud upon Damrow Cattle's creditors, including FNB Omaha and Plaintiff as a participant in the FNB Omaha/Damrow Cattle Take Out Loan. More

specifically, Defendants knew that Damrow Cattle's operating loan would be terminated. Based

upon concealments, conspiracies, misrepresentations and actively participating in fraud,

Defendants misled Plaintiff into entering into contracts with Damrow Cattle for the purchase of

corn and lending money to Damrow Cattle.

      22.     Damrow Cattle is now insolvent and unable to pay any of the amounts it owes

Plaintiff.

      23.     FNB Holdrege and Defendants Sterr and Wiebe, in 1999 caused Damrow Cattle

loan proceeds to be improperly paid to Carter, in the amount of $245,000.00.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

      24.     The Plaintiff realleges and incorporates by reference herein all of the foregoing

paragraphs of this Complaint.

      25.     On or about April 14, 2000, FNB Omaha entered into a loan agreement with

Damrow Cattle, whereby FNB Omaha agreed to finance certain corn purchases by Damrow

Cattle.

      26.     In reliance upon the agreement referenced above, Damrow Cattle entered into a

contract with Plaintiff to purchase 32,020 bushels of dry corn and 111,165 bushels of wet corn.

      27.     The actions and misrepresentations of FNB Holdrege as set forth above caused

FNB Omaha to withdraw its loan commitment to Damrow Cattle. The withdrawal of the loan

commitment, caused Damrow Cattle to be unable to pay for the corn Plaintiff delivered to

Damrow Cattle, and caused Damrow Cattle to be unable to repay the loans made by Damrow

Farms.

      28.     Plaintiff has not been paid for the corn delivered to Damrow Cattle, and such corn

had a reasonable value of $2.06 per bushel for a total value of $294,961.11.

29.     Plaintiff has not been repaid any of the loans made by it to Damrow Cattle, and the sum of $2,200,382.25 remains unpaid.

30.     Plaintiff is a third party beneficiary of the contract between FNB Holdrege and Damrow Cattle.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

31.     Plaintiff realleges and incorporates by reference herein all the foregoing paragraphs of this Complaint.

32.     The Defendant, FNB Holdrege, received the benefit of delivery of the corn by the Plaintiff and the loans made by the Plaintiff to Damrow Cattle. The Defendant FNB Holdrege knowingly accepted the benefits of the delivery of such corn by Plaintiff.

33.     It is inequitable and unconscionable to allow FNB Holdrege to receive the benefits of the corn delivered by the Plaintiff and the loans made by the Plaintiff to Damrow Cattle, and FNB Holdrege should be required to repay to the Plaintiff the reasonable value of the corn delivered by Plaintiff and the amounts of the loans made by the Plaintiff.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation / Fraudulent Inducement)

34.     Plaintiff realleges and incorporates by reference herein all the foregoing paragraphs of this Complaint.

35.     To induce Plaintiff sell corn to Damrow Cattle, Defendants directly and indirectly delivered materially inaccurate and otherwise false documents and information upon which Plaintiff reasonably relied in entering into said contracts.

36.     Upon information and belief, Defendants knowingly and intentionally misrepresented the financial condition of Damrow Cattle and concealed their pattern of

misconduct intending to fraudulently induce Plaintiff into selling corn to Damrow Cattle and to lend money to Damrow Cattle.

37.     These representations included, without limitation, verbal and written statements to Damrow Cattle, upon which Plaintiff relied, and verbal statements directly to Plaintiff.

38.     Defendants made these material misrepresentations to Damrow Cattle and Plaintiff, as a positive assertions knowing said misrepresentations to be false when made and/or with a reckless disregard for their truth or falsity.

39.     Defendants fraudulently made said representations with the knowledge and/or intention that Damrow Cattle and Plaintiff, would rely upon them and said representations were specifically intended to and did induce Plaintiff to enter into contracts to sell corn to with Damrow Cattle and to lend money to Damrow Cattle.

40.     Had Plaintiff been aware of the true facts and information that Defendants misrepresented, concealed, and otherwise failed and neglected to disclose, Plaintiff would not have entered into the corn sale contracts with Damrow Cattle, would have refused to lend money to Damrow Cattle, and would have refused to do business generally with Damrow Cattle. But for the Defendants' conduct, Plaintiff would not have sustained its damages alleged herein.

41.     As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with its sale of corn to Damrow Cattle and it lending of funds to Damrow Cattle.

### FOURTH CLAIM FOR RELIEF
**(Fraudulent Concealment / Fraudulent Nondisclosure)**

42.     Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

43.     Defendants knowingly and intentionally concealed and/or suppressed material information from Damrow Cattle and Plaintiff, regarding the true financial condition of Damrow Cattle, which information was known by Defendants. More specifically, Defendants knew and concealed or suppressed from Plaintiff certain liabilities and facts, which were not within the reasonably diligent attention, observation, and judgment of Plaintiff including at least the following: (1) liabilities of Damrow Cattle to Damrow Finance; (2) liabilities of Damrow Finance to FNB Holdrege; (3) liabilities of Damrow Cattle's customers to Damrow Finance; (4) liabilities of Damrow Cattle's customers to FNB Holdrege; and (5) the misdirection of the cash flow at Damrow Cattle.

44.     Defendants had a duty to disclose the true facts concerning the nature of Damrow Cattle's true financial condition, and knew or should have known that ascertainment of these true facts was not within reach of the reasonable diligent attention, observation, and judgment of Plaintiff because of Defendants' affirmative acts and efforts to conceal the same.

45.     Plaintiff was not on notice of, and was not aware of the false misleading nature of Defendants' concealments and/or of the existence of the true facts which had been concealed and/or suppressed.

46.     Defendants' intentional nondisclosures and concealments of material information from Plaintiff were designed to mislead and prevent Plaintiff from learning the true financial condition of Damrow Cattle.

47.     Defendants' intentional nondisclosures and concealments were intended to and did induce Plaintiff into entering into a corn contract with Damrow Cattle, and to induce Plaintiff into lending funds to Damrow Cattle.

48.   . As a direct and proximate result of Defendants' knowing and intentional nondisclosures and concealments, Plaintiff was reasonably misled about the true financial condition of Damrow Cattle.

49.   As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with the corn and cattle contracts.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

50.   Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

51.   Defendants negligently and/or recklessly, directly and/or recklessly, directly and/or indirectly, supplied false and misleading documents and information to Damrow Cattle and Plaintiff and/or failed to exercise reasonable care, caution and competence in obtaining and communication these documents and information to FNB Omaha, Damrow Cattle and Plaintiff.

52.   Defendants knew or should have known about the material facts and information concerning improper loan activities regarding Damrow Cattle both before and after Plaintiff entered into the corn contract with Damrow Cattle and loan agreements with Damrow Cattle.

53.   Plaintiff justifiably and reasonable relied on the documents and information to its damage and detriment.

54.   As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with the corn contract and loans to Damrow Cattle.

## SIXTH CLAIM FOR RELIEF
### (Conspiracy to Defraud Plaintiff)

55.   Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

56.    Defendants conspired with one another to develop and implement plans to defraud Plaintiff regarding the true nature of Damrow Cattle's financial condition, misapplication of Proceeds and insolvency.

57.    The purpose and intent of Defendants' preconceived plan and conspiracy was to induce Plaintiff into selling corn to Damrow Cattle and to loan funds to Damrow Cattle.

58.    Defendants carried out this preconceived plan by unlawfully concealing and misrepresenting the material facts and information regarding Damrow Cattle's true financial condition, including misapplication of Proceeds and insolvency.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of Racketeer Influence and Corrupt Organizations Act**
**("RICO"), 18 U.S.C. §1961 *et seq.*)**

59.    Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

60.    As applicable herein, the term "mailed" refers to the United States' Mails and/or any other common carrier. The term "wired" or "faxed" means the use of interstate and/or intrastate wires.

61.    FNB Holdrege is a "person" as that term is defined in the RICO statute, 18 U.S.C. §1961(3).

62.    FNB Holdrege is a federally chartered banking association and is an "enterprise" as that term is defined in the RICO statute, 18 U.S.C. §1961.

63.    Damrow Cattle and DFF are corporations organized under the laws of the State of Nebraska, and each constitute an "enterprise" as that term is defined under the RICO statute, 18 U.S.C. §1961.

64.    Upon information and belief FNB Holdrege and the other Defendants have engaged in more than two predicate acts as hereinabove alleged which constitute a pattern of racketeering activity as those terms are defined under the RICO statute, 18 U.S.C. §1961. Upon information and belief from as early as 1994 until April 2000, FNB Holdrege engaged in and committed various offenses involving acts which are prohibited under, *inter alia,* 18 U.S.C. §1941 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §1344 (financial institution fraud) which further constitute a patter of racketeering activity by and through a series of predicate acts which have continuity and a relationship to each other and that amounted to a threat of continued, unlawful and illegal activity. Upon information and belief FNB Holdrege has and other named Defendants have, through a series of predicate acts and pattern of racketeering activity, all of which were in violation of 18 U.S.C. §1962, caused Plaintiff to be damaged in an amount to be proved at trial.

65.    Upon information and belief FNB Holdrege, and the other Defendants, have conducted and participated, directly and indirectly, in the conduct of business with Damrow Cattle and Plaintiff through a series of predicate acts and a pattern of racketeering activity, all in violation of the RICO statute, 18 U.S.C. §1962, which has caused and continues to cause damage to Plaintiff in an amount to be proved at trial.

66.    Upon information and belief FNB Holdrege and the other named Defendants have conspired to violate 18U.S.C. §1962(b) and 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d), all as alleged herein.

67.    As the direct and proximate result of the foregoing, Plaintiff has sustained and will continue to sustain damages. Plaintiff is entitled to recover treble damages and the costs of this suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, respectfully requests that the Court enter judgment against Defendant First National Bank of Holdrege, Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Sterr, Defendant Wiebe, Defendant Harden, Defendant Riley, Defendant Utter, and Defendant Latter jointly and severally, as follows: (a) for special damages as proven at trial; (b) for general damages as proven at trial; (c) for pre-judgment interest and post-judgment interest as allowed by law; (d) for treble damages and attorneys' fees and costs incurred; and (e) for such other and further relief, including consequential damages deemed appropriate by the Court.

## JURY DEMAND

Plaintiff respectfully demands trial by jury.

Dated this 23 day of December, 2004.

DAMROW FARMS, A General Partnership,
Plaintiff,

By _____
Marty Damrow, General Partner

## VERIFICATION

STATE OF NEBRASKA          )
                                                    ) SS
COUNTY OF PHELPS      )

The undersigned, Marty Damrow, General Partner of Damrow Farms, hereby declares and

affirms that he has read the foregoing complaint and that its contents are true and correct to the best

of his knowledge and belief.



_____
Marty Damrow

Subscribed to and sworn before me, a Notary Public, on this 23 day of December, 2004.

ANITA K. SITES
MY COMMISSION EXPIRES
January 27, 2007

_____
Notary Public

Steven P. Vinton, #17817
BACON & VINTON, LLC
Attorneys at Law
416 10th Street
PO Box 208
Gothenburg, NE 69138
(308) 537-7161
and,


P. Stephen Potter, #13371
P. STEPHEN POTTER, P.C.
Attorney at Law
822 Lake Avenue
PO Box 348
Gothenburg, NE 69138
(308) 537-7119
Attorneys for Plaintiff

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| DAMROW FARMS, a General Partnership | CASE NO. CI04-212 |
| Plaintiff, | |
| vs. | AMENDED COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER and DOUGLAS SCOTT LATTER, | |
| Defendants. | |

COMES NOW Damrow Farms (herein "Plaintiff"), by and through its attorneys Bacon & Vinton, L.L.C. and P. Stephen Potter, PC, and for its Amended Complaint against the Defendants and each of them, states and alleges as follows:

### PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE

1.   Plaintiff is a general partnership with its principal place of business in Phelps County, Nebraska.

2.   First National Bank of Holdrege (hereafter "FNB Holdrege") is a national banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB Holdrege has acted through its officers and agents, including, Defendants Kenneth Slominsky, Eric Titus, Ronald Sterr, Tim Wiebe, Jeanette Harden, Kirk Riley, and Mark Utter.

3.   Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is named in his former capacity and individually.

4.   Eric Titus ("Titus") is a current officer and director of FNB Holdrege and is named in this capacity and individually.



EXHIBIT "B"

FILED

JAN 2 4 2005

JENNIFER L. NELSON
CLERK DISTRICT COURT
PHELPS COUNTY

5.      Ronald Sterr ("Sterr") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.      Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.      Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

8.      Kirk Riley ("Riley") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

9.      Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

10.     Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

11.     D.F.F., Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers. FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

12.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

## FACTS COMMON TO ALL CLAIMS

13.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and

cattle owned by third parties.

14.    In and about 1997, FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

15.    In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

16.    On or about April 14, 2000, at the request and inducement of FNB Holdrege, FNB Omaha refinanced FNB Holdrege's loan to Damrow Cattle and Damrow Finance (hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan"). As part of the conditions imposed by FNB Omaha to refinance Damrow Cattle and Damrow Finances debt to FNB Holdrege, FNB Omaha required that the indebtedness of Damrow Cattle be reduced. To raise capital to reduce its indebtedness, Damrow Cattle requested that Plaintiff lend money to it for application to its indebtedness to FNB Holdrege. Pursuant to such request, Damrow Farms sold real estate and crops owned by it, and loaned the sum of $2,200,382.25 to Damrow Cattle. The amount so loaned was then utilized by Damrow Cattle to pay off a bridge note made by FNB Omaha as part of its refinancing of the indebtedness of Damrow Cattle to FNB Holdrege, and to reduce other indebtedness of Damrow Cattle to FNB Omaha refinanced from FNB Holdrege. The loans made by the Plaintiff were evidenced by written documents, payable on demand, and Plaintiff has not previously made demand for repayment of such loans.

17.    At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow Cattle loans, FNB Holdrege represented to Damrow Cattle that FNB Omaha would continue to provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle

entered into agreements to purchase wet corn and dry corn from various producers of corn, including Plaintiff.

18.     In inducing the FNB Omaha/Damrow Cattle Take Out Loan, FNB Holdrege intentionally provided commercial information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle financing would be given to and relied upon by third parties, including Plaintiff. Plaintiff was reasonably entitled to rely upon FNB Holdrege's commercial information.

19.     At all times material, FNB Holdrege knew about, coordinated and actively arranged the making of the FNB Omaha/Damrow Cattle Take Out Loan.

20.     On January 11, 2001, within 8 months of making the FNB Omaha/Damrow Cattle Take Out Loan, FNB Omaha withdrew its loan commitment to Damrow Cattle and Damrow Cattle was placed in receivership by the District Court of Phelps County, Nebraska. At the time such receivership was filed, Plaintiff became aware that Damrow Cattle may be unable to perform under its contracts with Plaintiff for the purchase of corn, and that Damrow Cattle may be unaware to repay its loans from Plaintiff.

21.     Upon information and belief, both prior to and on January 11, 2001, FNB Holdrege and Defendants Slominsky, Titus, Sterr, Wiebe, Harden, Riley, Utter and Latter knew, participated and otherwise organized a fraud upon Damrow Cattle's creditors, including FNB Omaha and Plaintiff as a participant in the FNB Omaha/Damrow Cattle Take Out Loan. More specifically, Defendants knew that Damrow Cattle's operating loan would be terminated. Based upon concealments, conspiracies, misrepresentations and actively participating in fraud,

Defendants misled Plaintiff into entering into contracts with Damrow Cattle for the purchase of cattle and feed.

22.    Damrow Cattle is now insolvent and unable to pay any of the amounts it owes Plaintiff.

23.    FNB Holdrege and Defendants Sterr and Wiebe, in 1999 caused Damrow Cattle loan proceeds to be improperly paid to Carter, in the amount of $245,000.00, causing a further inability of Damrow Cattle to meet its financial commitments.

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract)

24.    The Plaintiff realleges and incorporates by reference herein all of the foregoing paragraphs of this Complaint.

25.    In reliance upon the agreement referenced above, Damrow Cattle entered into a contract with Plaintiff to purchase 32,020 bushels of dry corn and 111,165 bushels of wet corn.

26.    On or about April 14, 2000, FNB Omaha entered into a loan agreement with Damrow Cattle, whereby FNB Omaha agreed to finance certain corn purchases by Damrow Cattle. The actions and misrepresentations of FNB Holdrege and other Defendants as set forth above caused FNB Omaha to withdraw its loan commitment to Damrow Cattle. The withdrawal of the loan commitment, caused Damrow Cattle to be unable to pay for the corn Plaintiff delivered to Damrow Cattle, and caused Damrow Cattle to be unable to repay the loans made by Damrow Farms.

27.    The Defendants' actions in supplying false and misleading information, and causing loan proceeds and cattle sale proceeds to be misapplied consitute a breach of the contract described.

28.  Plaintiff is a third party beneficiary of the contract described above and is entitled to recover its damages resulting from the breach of such contract from Defendants.

29.  Plaintiff has not been paid for the corn delivered to Damrow Cattle, and such corn had a reasonable value of $2.06 per bushel for a total value of $294,961.11.

30.  Plaintiff has not been repaid any of the loans made by it to Damrow Cattle, and the sum of $2,200,382.25 remains unpaid.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

31.  Plaintiff realleges and incorporates by reference herein all the foregoing paragraphs of this Complaint.

32.  The Defendant, FNB Holdrege, received the benefit of delivery of the corn by the Plaintiff and the loans made by the Plaintiff to Damrow Cattle. The Defendant FNB Holdrege knowingly accepted the benefits of the delivery of such corn by Plaintiff.

33.  It is inequitable and unconscionable to allow FNB Holdrege to receive the benefits of the corn delivered by the Plaintiff and the loans made by the Plaintiff to Damrow Cattle, and FNB Holdrege should be required to repay to the Plaintiff the reasonable value of the corn delivered by Plaintiff and the amounts of the loans made by the Plaintiff.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation / Fraudulent Inducement)

34.  Plaintiff realleges and incorporates by reference herein all the foregoing paragraphs of this Complaint.

35.  To induce Plaintiff sell corn to Damrow Cattle, Defendants directly and indirectly delivered materially inaccurate and otherwise false documents and information upon which Plaintiff reasonably relied in entering into said contracts.

36.    Upon information and belief, Defendants knowingly and intentionally misrepresented the financial condition of Damrow Cattle and concealed their pattern of misconduct intending to fraudulently induce Plaintiff into selling corn to Damrow Cattle and to lend money to Damrow Cattle.

37.    These representations included, without limitation, verbal and written statements to Damrow Cattle, upon which Plaintiff relied, and verbal statements directly to Plaintiff.

38.    Defendants made these material misrepresentations to Damrow Cattle and Plaintiff, as a positive assertions knowing said misrepresentations to be false when made and/or with a reckless disregard for their truth or falsity.

39.    Defendants fraudulently made said representations with the knowledge and/or intention that Damrow Cattle and Plaintiff, would rely upon them and said representations were specifically intended to and did induce Plaintiff to enter into contracts to sell corn to with Damrow Cattle and to lend money to Damrow Cattle.

40.    Had Plaintiff been aware of the true facts and information that Defendants misrepresented, concealed, and otherwise failed and neglected to disclose, Plaintiff would not have entered into the corn sale contracts with Damrow Cattle, would have refused to lend money to Damrow Cattle, and would have refused to do business generally with Damrow Cattle. But for the Defendants' conduct, Plaintiff would not have sustained its damages alleged herein.

41.    As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with its sale of corn to Damrow Cattle and it lending of funds to Damrow Cattle.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Concealment / Fraudulent Nondisclosure)

42.     Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

43.     Defendants knowingly and intentionally concealed and/or suppressed material information from Damrow Cattle and Plaintiff, regarding the true financial condition of Damrow Cattle, which information was known by Defendants. More specifically, Defendants knew and concealed or suppressed from Plaintiff certain liabilities and facts, which were not within the reasonably diligent attention, observation, and judgment of Plaintiff including at least the following: (1) liabilities of Damrow Cattle to Damrow Finance; (2) liabilities of Damrow Finance to FNB Holdrege; (3) liabilities of Damrow Cattle's customers to Damrow Finance; (4) liabilities of Damrow Cattle's customers to FNB Holdrege; and (5) the misdirection of the cash flow at Damrow Cattle.

44.     Defendants had a duty to disclose the true facts concerning the nature of Damrow Cattle's true financial condition, and knew or should have known that ascertainment of these true facts was not within reach of the reasonable diligent attention, observation, and judgment of Plaintiff because of Defendants' affirmative acts and efforts to conceal the same.

45.     Plaintiff was not on notice of, and was not aware of the false misleading nature of Defendants' concealments and/or of the existence of the true facts which had been concealed and/or suppressed.

46.   Defendants' intentional nondisclosures and concealments of material information from Plaintiff were designed to mislead and prevent Plaintiff from learning the true financial condition of Damrow Cattle.

47.   Defendants' intentional nondisclosures and concealments were intended to and did induce Plaintiff into entering into a corn contract with Damrow Cattle, and to induce Plaintiff into lending funds to Damrow Cattle.

48.   As a direct and proximate result of Defendants' knowing and intentional nondisclosures and concealments, Plaintiff was reasonably misled about the true financial condition of Damrow Cattle.

49.   As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with the corn and cattle contracts.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

50.   Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

51.   Defendants negligently and/or recklessly, directly and/or recklessly, directly and/or indirectly, supplied false and misleading documents and information to Damrow Cattle and Plaintiff and/or failed to exercise reasonable care, caution and competence in obtaining and communication these documents and information to FNB Omaha, Damrow Cattle and Plaintiff.

52.   Defendants knew or should have known about the material facts and information concerning improper loan activities regarding Damrow Cattle both before and after Plaintiff entered into the corn contract with Damrow Cattle and loan agreements with Damrow Cattle.

53.   Plaintiff justifiably and reasonable relied on the documents and information to its damage and detriment.

54.   As a direct and proximate result of the foregoing, Plaintiff has been damaged by its losses in connection with the corn contract and loans to Damrow Cattle.

### SIXTH CLAIM FOR RELIEF
#### (Conspiracy to Defraud Plaintiff)

55.   Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

56.   Defendants conspired with one another to develop and implement plans to defraud Plaintiff regarding the true nature of Damrow Cattle's financial condition, misapplication of Proceeds and insolvency.

57.   The purpose and intent of Defendants' preconceived plan and conspiracy was to induce Plaintiff into selling corn to Damrow Cattle and to loan funds to Damrow Cattle.

58.   Defendants carried out this preconceived plan by unlawfully concealing and misrepresenting the material facts and information regarding Damrow Cattle's true financial condition, including misapplication of Proceeds and insolvency.

### SEVENTH CLAIM FOR RELIEF
#### (Violation of Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.*)

59.   Plaintiff realleges and incorporates by reference all the foregoing paragraphs of this Complaint.

60.   As applicable herein, the term "mailed" refers to the United States' Mails and/or any other common carrier. The term "wired" or "faxed" means the use of interstate and/or intrastate wires.

61.   FNB Holdrege is a "person" as that term is defined in the RICO statute, 18 U.S.C. §1961(3).

62.    FNB Holdrege is a federally chartered banking association and is an "enterprise" as that term is defined in the RICO statute, 18 U.S.C. §1961.

63.    Upon information and belief FNB Holdrege and the other Defendants have engaged in more than two predicate acts as hereinabove alleged which constitute a pattern of racketeering activity as those terms are defined under the RICO statute, 18 U.S.C. §1961. Upon information and belief from as early as 1994 until April 2000, FNB Holdrege engaged in and committed various offenses involving acts which are prohibited under, *inter alia*, 18 U.S.C. §1941 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §1344 (financial institution fraud) which further constitute a patter of racketeering activity by and through a series of predicate acts which have continuity and a relationship to each other and that amounted to a threat of continued, unlawful and illegal activity. Upon information and belief FNB Holdrege has and other named Defendants have, through a series of predicate acts and pattern of racketeering activity, all of which were in violation of 18 U.S.C. §1962, caused Plaintiff to be damaged in an amount to be proved at trial.

64.    Upon information and belief FNB Holdrege, and the other Defendants, have conducted and participated, directly and indirectly, in the conduct of business with Damrow Cattle and Plaintiff through a series of predicate acts and a pattern of racketeering activity, all in violation of the RICO statute, 18 U.S.C. §1962, which has caused and continues to cause damage to Plaintiff in an amount to be proved at trial.

65.    Upon information and belief FNB Holdrege and the other named Defendants have conspired to violate 18U.S.C. §1962(b) and 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d), all as alleged herein.

66.    As the direct and proximate result of the foregoing, Plaintiff has sustained and will continue to sustain damages. Plaintiff is entitled to recover treble damages and the costs of this suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, respectfully requests that the Court enter judgment against Defendant First National Bank of Holdrege, Defendant Kenneth Slominsky, Defendant Eric Titus, Defendant Sterr, Defendant Wiebe, Defendant Harden, Defendant Riley, Defendant Utter, and Defendant Latter jointly and severally, as follows: (a) for special damages as proven at trial; (b) for general damages as proven at trial; (c) for pre-judgment interest and post-judgment interest as allowed by law; (d) for treble damages and attorneys' fees and costs incurred; and (e) for such other and further relief, including consequential damages deemed appropriate by the Court.

## JURY DEMAND

Plaintiff respectfully demands trial by jury.

Dated this __18__ day of January, 2005.

DAMROW FARMS, A General Partnership, Plaintiff,

SIGN & DATE ➡️

By _____

Marty Damrow, General Partner

## VERIFICATION

STATE OF NEBRASKA      )
                       ) SS
COUNTY OF *Phelps*     )

   The undersigned, Marty Damrow, General Partner of Damrow Farms, hereby declares and

affirms that he has read the foregoing Amended Complaint and that its contents are true and correct

to the best of his knowledge and belief.

PLEASE
SIGN ▪ ▪ ▶

_____
Marty Damrow

   Subscribed to and sworn before me, a Notary Public, on this 24th day of January, 2005.

GENERAL NOTARY - State of Nebraska
ROXANNE D. LUSH
My Comm. Exp. Aug. 11, 2008

NOTARIZE
▪ ▪ ▪ ▶

_____
Notary Public

Steven P. Vinton, #17811
BACON & VINTON, LLC
Attorneys at Law
416 10th Street, PO Box 208
Gothenburg, NE 69138
(308) 537-7161
and,


P. Stephen Potter, #13371
P. STEPHEN POTTER, P.C.
Attorney at Law
822 Lake Avenue, PO Box 348
Gothenburg, NE 69138
(308) 537-7119
Attorneys for Plaintiff

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| DAMROW FARMS, a General Partnership, | CASE NO. CI04-212 |
| Plaintiff, | |
| vs. | CERTIFICATE OF SERVICE |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKI, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER | |
| Defendants. | |

The undersigned hereby certifies that on the _11_ day of February, 2005, a true and correct

copy of the Second Amended Complaint filed in this action was mailed to the following

individuals by U.S. First Class Mail, postage prepaid.

| | | |
|---|---|---|
| Douglas Scott Latter | Eric Titus | First National Bank |
| c/o Robert J. Bothe | c/o Robert J. Bothe | c/o Robert J. Bothe |
| 1601 Dodge Street, Suite 3700 | 1601 Dodge Street, Suite 3700 | 1601 Dodge Street, Suite 3700 |
| Omaha, NE 68102 | Omaha, NE 68102 | Omaha, NE 68102 |

Damrow Farms, Plaintiff,

By _____

Steven P. Vinton, #17817
BACON & VINTON, LLC
416 10th Street, PO Box 208
Gothenburg, NE 69138
(308) 537-7161

EXHIBIT "C"

IN THE DISTRICT COURT OF PHELPS COUNTY, NEBRASKA

| | |
|---|---|
| DAMROW FARMS, a General Partnership | CASE NO. CI04-212 |
| Plaintiff, | |
| vs. | SECOND AMENDED COMPLAINT AND JURY DEMAND |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER and DOUGLAS SCOTT LATTER, | |
| Defendants. | |

COMES NOW Damrow Farms (herein "Plaintiff"), by and through its attorneys Bacon & Vinton, L.L.C. and P. Stephen Potter, PC, and for its Second Amended Complaint against the Defendants and each of them, states and alleges as follows:

**PARTIES, RELEVANT NON-PARTIES JURISDICTION, VENUE**

1.     Plaintiff is a general partnership with its principal place of business in Phelps County, Nebraska.

2.     First National Bank of Holdrege (hereafter "FNB Holdrege") is a national banking corporation with offices in Holdrege, Nebraska. At times material to this action, FNB Holdrege has acted through its officers and agents, including, Defendants Kenneth Slominsky, Eric Titus, Ronald Sterr, Tim Wiebe, Jeanette Harden, Kirk Riley, Mark Utter, and Douglas Scott Latter.

3.     Kenneth Slominski ("Slominski") is the former president of FNB Holdrege, and is named in his former capacity and individually.

4.     Eric Titus ("Titus") is a current officer and director of FNB Holdrege and is named in this capacity and individually.

5.      Ronald Sterr ("Sterr") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

6.      Tim Wiebe ("Wiebe") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

7.      Jeanette Harden ("Harden") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

8.      Kirk Riley ("Riley") is a former officer and employee of FNB Holdrege and is named in this capacity and individually.

9.      Mark Utter ("Utter") is a former officer and director of FNB Holdrege and is named in this capacity and individually.

10.     Douglas Scott Latter ("Latter") is a current officer and employee of FNB Holdrege and is named in this capacity and individually.

11.     Damrow Cattle Inc. is a Nebraska Corporation that operated a feedlot feeding its own cattle and cattle owned by third parties.

12.     D.F.F., Inc. (herein "Damrow Finance"), was an affiliate of Damrow Cattle and provided financing to Damrow Cattle's customers. FNB Holdrege provided Damrow Finance the funds that Damrow Finance loaned to Damrow Cattle's customers so they could finance the purchase, ownership, and feeding of cattle at Damrow Cattle's feedlot(s). FNB Holdrege also provided Damrow Cattle the financing Damrow Cattle needed to procure cattle and to meet its working capital needs.

13.     Carter Feeders, Inc. (herein "Carter") is a Nebraska Corporation which owns and operates a feedlot near Orleans, Nebraska.

14.     Pursuant to Neb. Rev. Stat. §§ 25-403.01 and 25-403.02, Phelps County is the appropriate venue for this matter.

## FACTS COMMON TO ALL CLAIMS

15.     Based upon information and belief, the following facts are stated. At all times material, Damrow Cattle, Inc. ("Damrow Cattle") operated a feedlot feeding its own cattle and cattle owned by third parties.

16.     In and about 1997, and continuing through April 14, 2000 FNB Holdrege sold to First National Bank of Omaha ("FNB Omaha") participations in loans made by FNB Holdrege to Damrow Cattle and Damrow Finance. Under the terms of their participation agreement(s), the participations had the effect of reducing FNB Holdrege's loan balances owed by Damrow Cattle and Damrow Finance.

17.     In early 2000, FNB Holdrege approached FNB Omaha about having FNB Omaha refinance loans made by FNB Holdrege to Damrow Cattle and Damrow Finance.

18.     On or about April 14, 2000, at the request and inducement of FNB Holdrege, FNB Omaha, FNB Holdrege and Damrow Cattle entered into an agreement whereby FNB Omaha agreed to refinance FNB Holdrege's loans to Damrow Cattle and Damrow Finance (hereinafter the "FNB Omaha/Damrow Cattle Take Out Loan"). The terms of such agreement provided that FNB Omaha agreed to lend Damrow Cattle sufficient funds to pay off its loans from FNB Holdrege, in the form of a short term "bridge note" in the amount of $1,300,000.00, an operating note in the amount of $4,000,000.00, and a customer finance note of $4,000,000.00. Damrow Cattle agreed to procure the agreement of Damrow Farms (Plaintiff herein) to sell a feedlot and adjoining real estate owned partially by Damrow Farms and partially by Damrow Cattle for the sum of $2,000,000.00, and apply the net sale proceeds, after payment of closing costs and a first lien held by MetLife in the amount of slightly under $1,000,000.00, to the FNB Omaha $1,300,000.00 bridge note. Damrow Cattle complied with all conditions imposed upon it by FNB Omaha and FNB Holdrege in order to refinance its debt

owed to FNB Holdrege, by selling the feedlot and real estate for $2,000,000.00, which sale was closed on July 23, 2000. FNB Holdrege failed to apply the sale proceeds to Damrow Cattle's debt to FNB Omaha, and instead applied the net sale proceeds after payment of the MetLife first lien to an indebtedness incurred by Damrow Cattle as a result of a settlement with the bankruptcy trustee in the John Morken bankruptcy.

19.     To raise additional capital to reduce its indebtedness, Damrow Cattle requested that Plaintiff lend money to it for application to its indebtedness to FNB Holdrege. Pursuant to such request, Plaintiff sold real estate and crops owned by it, and loaned the sum of $2,200,382.25 to Damrow Cattle. The amount so loaned was then utilized by Damrow Cattle to reduce its indebtedness to FNB Omaha as part of its refinancing of the indebtedness of Damrow Cattle to FNB Holdrege. The loans made by the Plaintiff were evidenced by written documents, payable on demand, and Plaintiff has not previously made demand for repayment of such loans.

20.     At or near the time FNB Holdrege induced FNB Omaha to refinance the Damrow Cattle loans, FNB Holdrege represented to Damrow Cattle that FNB Omaha would continue to provide financing to Damrow Cattle. In reliance on these representations, Damrow Cattle entered into agreements to purchase wet corn and dry corn from various producers of corn, including Plaintiff.

21.     In inducing the FNB Omaha/Damrow Cattle Take Out Loan, FNB Holdrege intentionally provided commercial information which was inaccurate. FNB Holdrege knew and it was also reasonably foreseeable that the commercial information supplied by FNB Holdrege in connection with Damrow Cattle financing would be given to and relied upon by third parties, including Plaintiff. Plaintiff was reasonably entitled to rely upon FNB Holdrege's commercial information.