IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WAYNE ABRAHAMSON, BERGMAN BROTHERS, and WAYNE CARLSON, | ) ) ) ) | **4:05CV3039** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER, | ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) ) | |
| _____ | ) ) | |
| PHILLIP M, KELLY, as Trustee of the bankruptcy estate of DENNIS R. DAMROW, together with SHERRY DAMROW, as their interests may be established, | ) ) ) ) ) ) | **4:05CV3040** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| FIRST NATIONAL BANK OF HOLDREGE, KENNETH SLOMINSKY, ERIC TITUS, RONALD STERR, TIM WIEBE, JEANETTE HARDEN, KIRK RILEY, MARK UTTER, and DOUGLAS SCOTT LATTER, | ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |
| _____ | ) | |

DONALD DAMROW,                    )          **4:05CV3041**
                                 )
            Plaintiff,           )
                                 )
vs.                              )
                                 )
FIRST NATIONAL BANK OF           )          **MEMORANDUM**
HOLDREGE, KENNETH                )          **AND ORDER**
SLOMINSKY, ERIC TITUS,           )
RONALD STERR, TIM WIEBE,         )
JEANETTE HARDEN, KIRK            )
RILEY, MARK UTTER, and           )
DOUGLAS SCOTT LATTER,            )
                                 )
            Defendants.          )
_____  )
                                 )
MARTIN DAMROW,                   )          **4:05CV3042**
                                 )
            Plaintiff,           )
                                 )
vs.                              )
                                 )
FIRST NATIONAL BANK OF           )          **MEMORANDUM**
HOLDREGE, KENNETH                )          **AND ORDER**
SLOMINSKY, ERIC TITUS,           )
RONALD STERR, TIM WIEBE,         )
JEANETTE HARDEN, KIRK            )
RILEY, MARK UTTER, and           )
DOUGLAS SCOTT LATTER,            )
                                 )
            Defendants.          )
_____  )

| | | |
|---|---|---|
| DAMROW and DAMROW, a<br>General Partnership, | ) | **4:05CV3043** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIRST NATIONAL BANK OF<br>HOLDREGE, KENNETH<br>SLOMINSKY, ERIC TITUS,<br>RONALD STERR, TIM WIEBE,<br>JEANETTE HARDEN, KIRK<br>RILEY, MARK UTTER, and<br>DOUGLAS SCOTT LATTER, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM<br>AND ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| DAMROW FARMS, a<br>General Partnership, | ) | **4:05CV3044** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| FIRST NATIONAL BANK OF<br>HOLDREGE, KENNETH<br>SLOMINSKY, ERIC TITUS,<br>RONALD STERR, TIM WIEBE,<br>JEANETTE HARDEN, KIRK<br>RILEY, MARK UTTER, and<br>DOUGLAS SCOTT LATTER, | )<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM<br>AND ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

-3-

The six actions noted in the caption are before me on motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for an order pursuant to Fed. R. Civ. P. 12(e) and (with respect to the fraud-based claims) pursuant to Fed. R. Civ. P. 9(b), requiring that the plaintiffs in each of the actions make the claims more definite in specified respects.  I have already ruled on one set of motions to dismiss or for more definite statement, in which I granted the motions for a more definite statement and gave specific directions as to refining the complaints.  See the May 20, 2005 orders.[1]  The complaints were amended, and the motions before me relate to the complaints as amended in response to my May 20 orders.  The complaints are nearly identical.  Each complaint purports to state the following claims for relief:  (1) breach of verbal contract; (2) breach of written contract; (3) unjust enrichment; (4) fraud and misrepresentation, including claims of non-disclosure, deceit and concealment; (5) fraudulent inducement; (6) negligent misrepresentation; (7) civil conspiracy; and (8) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

I will dismiss the contract, unjust enrichment, fraud, negligent misrepresentation and RICO claims for noncompliance with my May 20 orders. Having done so, I dismiss the civil conspiracy claim for failure to state a claim (as there are no underlying torts, the complaints fail to state a claim of conspiracy to commit those torts).  Thus all claims are properly dismissed.  Furthermore, even if I were to disregard the noncompliance with my May 20 orders, the amended complaints fail to state a claim and could alternatively be dismissed for that reason.

---

[1]In 4:05CV3039, filing 32; in 4:05CV3040, filing 29; in 4:05CV3041, filing 29; in 4:05CV3042, filing 28; in 4:05CV3043, filing 31; and in 4:05CV3044, filing 30. These cases were all removed from state court, and had been amended in state court prior to removal. There were two state court amendments prior to removal in 4:05CV3039, 4:05CV3041, 4:05CV3043, and 4:05CV3044.  There was one state court amendment prior to removal in each of the other two cases.

# I. FACTS

Greatly simplified, these are the facts.[2]  Damrow Cattle, Inc. operated a feedlot feeding its and third parties' cattle.  An affiliated company, DFF, Inc. ("Damrow Finance"), provided financing to some of Damrow Cattle's customers.  First National Bank of Holdrege (FNB-H) loaned money to Damrow Cattle and Damrow Finance. It sold participations in some of these loans to First National Bank of Omaha (FNB-O) in or about 1997 through April 14, 2000.  Some of the participations were pursuant to a Master Non-Recourse Loan Participation Agreement, dated May 14, 1999, between FNB-H and FNB-O (the "Loan Participation Agreement.") FNB-H allegedly breached the Loan Participation Agreement.  At some unspecified time, FNB-H allegedly represented to Damrow Cattle that it would continue to provide financing to Damrow Cattle.  On April 14, 2000, FNB-O loaned Damrow Cattle and Damrow Finance sufficient funds to pay in full FNB-H's loans to those two companies (the "Take-Out Financing").  After the Take-Out Financing paid off FNB-H's outstanding loans, FNB-H had no further loans with Damrow Cattle or Damrow Finance.  On January 11, 2001, FNB-O ceased financing Damrow Cattle and Damrow Finance, and a receiver was appointed over their operations.

In a separate lawsuit not before me, FNB-O sued FNB-H for fraud in connection with the Take-Out Financing.  The plaintiffs in the suits before me allege that the suit between the two banks was settled by the payment of a substantial sum

---

[2]I note that no plaintiff in any of the six cases submitted a brief opposing the motions to dismiss now before me.  (However, earlier today and by separate order I denied a motion by the bankruptcy trustee in the Dennis Damrow bankruptcy for additional time to respond to the motion to dismiss in 4:05CV3040.  That motion was grossly untimely.)  Failure to file an opposing brief prevents the nonmoving party from contesting the moving party's statement of facts but may not be considered to be a confession of the motion.  NECivR 7.1(b)(1)(C).  I accept the statements of facts in each moving party's brief as true for the limited purpose of ruling on the Rule 12(b)(6) motions.

by FNB-H to FNB-O.  Dennis Damrow was the principal of Damrow Cattle.  He was prosecuted for criminal fraud, pled guilty, and is currently incarcerated.

John Morken, individually and through a company called Spring Grove Livestock, fed cattle at Damrow Cattle and other feedlots.  Morken filed for bankruptcy in Minnesota in 1994.  The Minnesota bankruptcy trustee questioned whether loan documents involving FNB-H and Damrow Cattle attached to a proof of claim had been altered prior to filing and filed suit against Damrow Cattle, FNB-H, and others.  This Minnesota suit was settled, with FNB-H and Damrow Cattle paying substantial sums.  Morken is not a party to the suits before me.

The lawsuits before me are brought by customers of Damrow Cattle.[3]  They are not suing Damrow Cattle, but rather FNB-H and certain of its current and former officers.  Thus these are lender liability cases far removed from the prototypical situation where a borrower sues its lender.  They are suits brought by  customers of the borrower against the borrower's former lender.  I next briefly explain the parties and claims in the cases before me.

At some unspecified time, the three **plaintiffs in 4:05CV3039** allegedly entered into agreements to purchase and feed cattle and to sell their corn to Damrow Cattle. They allegedly suffered damages because Damrow Cattle did not perform its contracts for the purchase of corn and the feeding of cattle.

---

[3]There is one other lawsuit before me brought by Damrow Cattle customers against FNB-H.  There are no pending motions before me in that suit, 8:05CV015, in which the plaintiffs are represented by different counsel than the one attorney who represents all plaintiffs in the six cases that are the subject of this order.  After the most recent amendments, the amended complaints before me are now obviously modeled after and strikingly similar to the complaint in 8:05CV015–but not identical.

Phillip M. Kelly, trustee of the Bankruptcy Estate of Dennis R. Damrow, together with Sherry Damrow, as their interests may be established, are the **plaintiffs in 4:05CV3040.** Sherry Damrow is the ex-wife of Dennis Damrow, and pursuant to their divorce decree all claims of Dennis Damrow against FNB-H were assigned to Sherry Damrow. At the time of this order, the status of that assignment and any claims of Sherry Damrow are uncertain in light of rulings by the bankruptcy court and the bankruptcy trustee has been added as a party. At an unspecified time, Sherry Damrow and Dennis Damrow allegedly entered into agreements with Damrow Cattle for the purchase and feeding of cattle. Damrow Cattle allegedly entered into these agreements in reliance on FNB-H's representations to Damrow Cattle that FNB-H would continue to provide financing to Damrow Cattle. These plaintiffs further allege that FNB-H provided inaccurate commercial information to FNB-O, that it was foreseeable that third parties (including Sherry and Dennis Damrow) would rely on the inaccurate information, and that Sherry and Dennis Damrow relied on this inaccurate information in deciding to enter into contracts with Damrow Cattle for the purchase and feeding of cattle. These plaintiffs further allege that as a result of FNB-H's unspecified actions, Dennis Damrow was forced to sell certain property to finance Damrow Cattle. This included the forced sale of Dennis Damrow's stock in Carter Feeders, Inc. to Damrow Cattle at a discounted price.

At some unspecified time, **Donald Damrow, the plaintiff in 4:05CV3041**, entered into agreements to purchase and feed feeder cattle and to redeem his stock in Damrow Cattle. This was in reliance on FNB-H's representations to Damrow Cattle that FNB-H would continue to provide financing to Damrow Cattle. Donald Damrow claims damages in part because Damrow Cattle did not perform its cattle feeding contracts and in part because the withdrawal of financing to and the appointment of a receiver for Damrow Cattle caused redemption of his stock.

**Martin Damrow, the plaintiff in 4:05CV3042**, at some unspecified time entered into agreements with Damrow Cattle to purchase and feed feeder cattle. He allegedly prepaid Damrow Cattle for cattle feed. Damrow Cattle allegedly entered

into these agreements in reliance on FNB-H's representations to Damrow Cattle that FNB-H would continue to provide financing to Damrow Cattle. Martin Damrow also allegedly relied on these alleged FNB-H misrepresentations to Damrow Cattle. Martin Damrow claims damages because Damrow Cattle did not perform its contracts for the feeding of cattle and did not repay him for the prepaid feed he allegedly delivered.

**Damrow and Damrow, a general partnership, is the plaintiff in 4:05CV3043.** This partnership entered into agreements with Damrow Cattle whereby it agreed to sell corn to Damrow Cattle, allegedly in reliance on FNB-H's representations to Damrow Cattle that FNB-H would continue to provide financing to Damrow Cattle and on alleged representations concerning the financial condition of Damrow Cattle. The partnership allegedly suffered damages in part because Damrow Cattle did not perform its contracts for the purchase of corn and repayment of loans due to the withdrawal of financing and the appointment of a receiver.

**Damrow Farms, another general partnership, is the plaintiff in 4:05CV3044.** Damrow Farms entered into agreements with Damrow Cattle whereby Plaintiff agreed to loan money and sell corn to Damrow Cattle, allegedly in reliance on FNB-H's representations to Damrow Cattle that FNB-H would continue to provide financing to Damrow Cattle and on alleged representations concerning the financial condition of Damrow Cattle. Damrow Farms allegedly suffered damages in part because Damrow Cattle did not perform its contracts for the purchase of corn and repayment of loans due to the withdrawal of financing and the appointment of a receiver.

## II.  DISCUSSION

### A.  Noncompliance with Court's Order

My May 20, 2005 orders directed that the complaints be made more definite as to all claims other than the unjust enrichment and civil conspiracy claims.  They required that specified factual assertions be added to the complaints–additions necessary to state a claim for relief under Rule 12(b)(6), and as to the fraud-based claims, with the specificity required by Rule 9(b).  The May 20 orders also but explicitly stated that those necessary facts be included "in the section of the complaints dealing with each such claim."  I included the requirement that the necessary amendments be included with each claim because no judge should be forced to search through a complaint like a pig hunting for truffles.  Cf. United States v. Stuckey, 255 F.3d 528, 531 (8th Cir. 2001) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) ("Judges are not like pigs, hunting for truffles buried in briefs.") .

Apparently Plaintiffs do not believe that I meant what I wrote.  The amended complaints contain rambling general factual allegations followed by specific claims.  Though I do not believe I am required to do so in light of the clear directives in my May 20 orders, I have reviewed the complaints to determine whether they anywhere contain the additional factual allegations specified in my May 20 orders.  They do not.

I will dismiss all claims other than the unjust enrichment and civil conspiracy claims for failure to comply with the court's May 20 orders.  Fed. R. Civ. P. 41(b) (an action may be involuntarily dismissed "[f]or failure of the plaintiff to . . . comply with . . . any order of court . . . .").  See Mangan v. Weinberger, 848 F.2d 909 (8th Cir. 1988), cert. denied, 488 U.S. 1013 (1989) (complaint as amended in response to initial motion to dismiss for Rule 8 noncompliance was dismissed with prejudice on second motion to dismiss for Rule 8 noncompliance and additionally for failure to state claim on which relief could be granted).

## B.  Rule 12(b)(6) Motion

I turn now to the Rule 12(b)(6) motions as they apply to the unjust enrichment and civil conspiracy claims–the claims unaffected by my dismissal for noncompliance with court orders.   In addition, I consider whether those claims dismissed for noncompliance with my May 20 orders should be dismissed for the additional reason that they fail to state a claim for relief.   In doing so, I consider the added factual assertions which I did find in the amended complaints, whether or not "misplaced."

In determining whether the complaints state claims upon which relief can be granted, I am required to accept as true all factual allegations in the complaints, but to give no effect to conclusory allegations of law.   See Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).   A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.   Krentz v. Robertson, 228 F.3d 897, 905 (8th Cir. 2000).   In other words, dismissal is justified only when the allegations of the complaint itself clearly demonstrate that the plaintiff does not have a claim.   5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 704 (3d ed. 2004).   As I will explain, the complaints fail to state any claim.

If the plaintiffs had submitted briefs in opposition to the motions to dismiss, I would address each claim required to be stated with more specificity, the particular specifics required by my prior order, and explain in some detail why the amended complaints cannot be construed to contain those specifics.  As Plaintiffs chose not to submit briefs and in the interests of judicial economy, I forego exhaustive explanation and instead highlight the main reasons why the complaints fail to state claims.  I address the claims in the order in which they appear in the complaints.

<u>Failure to State a Claim for Breach of Verbal Contract</u>

The plaintiffs in each of the cases before me assert that FNB-H and Damrow Cattle had a "verbal operating agreement" whereby FNB-H would continue to provide financing to Damrow Cattle, and that FNB-H's failure to provide continued financing to Damrow Cattle after the Take-Out Financing breached this verbal operating agreement.

Even if there were such an agreement, it would be a verbal "credit agreement" that is unenforceable under Nebraska law.[4] A "credit agreement" includes "[a] contract, promise, undertaking, offer, or commitment to loan money or to grant or extend credit."  Neb. Rev. Stat. Ann. § 45-1,112(1)(a) (LexisNexis 2005).  Nebraska law provides that "[a] debtor or a creditor may not maintain an action or assert a defense in an action based on a credit agreement unless the credit agreement is in writing, expresses consideration, sets forth the relevant terms and conditions of the credit agreement, and is signed by the creditor and by the debtor."  <u>Id.</u> § 45-1,113(1).

---

[4]Furthermore, the plaintiffs assert that their rights under this verbal agreement arise from their third-party beneficiary status.  As set forth below, I separately address and reject the third-party beneficiary arguments, whether they arise under verbal or written contracts.

<u>Failure to State a Claim for Breach of Written Contract</u>

The plaintiffs assert that they are third-party beneficiaries of the Loan Participation Agreement, and they attach a copy of that document to the amended complaints.[5]  However, and significantly, the plaintiffs have not explained how FNB-H[6] breached the Loan Participation Agreement, or why they should have third-party beneficiary rights under that agreement.  Review of the Loan Participation Agreement demonstrates that it did not expressly make the plaintiffs third-party beneficiaries. The complaints contain only a conclusory allegation that the plaintiffs are third-party beneficiaries to the Loan Participation Agreement by virtue of the fact that they were long-standing customers of Damrow Cattle.

In Nebraska, "for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them."  <u>Neb. Beef, Ltd. v. Universal Sur. Co.</u>, 607 N.W.2d 227, 233 (Neb. App. 2000).  <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Alder v. First Nat'l Bank & Trust</u>

---

[5]Consideration of the contract attached to the amended complaints does not require that the Rule 12(b)(6) motion be converted to a motion for summary judgment. <u>Stahl v. United States Dep't of Agric.</u>, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss" without converting the motion to one for summary judgment.); <u>Meehan v. United Consumers Club Franchising Corp.</u>, 312 F.3d 909, 913 (8th Cir. 2002) ("'materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint [on a 12(b)(6) motion].'" (quoting <u>Morton v. Becker</u>, 793 F.2d 185, 187 (8th Cir. 1986).).

[6]The complaints assert breach of contract claims not only against FNB-H, but against current and former officers and employees in their individual capacities. Nowhere do the complaints allege that any of the individual defendants were parties to any contracts or breached any contracts with FNB-O, Damrow Cattle, or the plaintiffs.  For this reason alone, the breach of contract claims must be dismissed as to the individual defendants.

Co., 491 N.W.2d 686, 689 (Neb. 1992) (same); Lauritzen v. Davis, 335 N.W. 2d 520, 526 (Neb. 1983) (same).  When the parties to an agreement do not intend to benefit third parties at the time the agreement is formed, the third parties do not possess third-party beneficiary status.  Wood v. Wood, 667 N.W.2d 235, 242 (Neb. 2003) (citing Marten v. Staab, 543 N.W. 2d 436, 442 (Neb. 1996).)

The complaints before me do not contain allegations that the parties to the Loan Participation Agreement intended to benefit the plaintiffs at the time it was made.  The terms of the Loan Participation Agreement do not indicate that the rights or interests of any other parties were contemplated.  The complaints fail to state a claim for breach of written contract.

### Failure to State a Claim for Unjust Enrichment

Under Nebraska law, a party can recover on a claim for unjust enrichment only when "benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefor . . . ." Haggard Drilling, Inc. v. Greene, 236 N.W.2d 841, 846 (Neb. 1975) (internal citation omitted).  To recover on an unjust enrichment claim, the plaintiffs must plead that they bestowed a benefit on the defendants and that it would be unjust to allow the defendants to retain that benefit.  Here, Plaintiffs do not plead that they bestowed any benefit on Defendants.  They allege that they had some form of business dealings with Damrow Cattle (varying from cattle feeding contracts, sale of corn, loan or payment of funds, and sale of stock), that FNB-H knowingly received the benefit of their business dealings with Damrow Cattle, and that is it inequitable to allow FNB-H to receive these benefits.  The complaints do not allege that FNB-H was Damrow Cattle's lender when Plaintiffs had the business dealings at issue with Damrow Cattle.  The allegations are that FNB-H ceased lending money to Damrow Cattle in April 2000, and that Damrow Cattle continued operations until late 2000 or early 2001.  Furthermore, even if FNB-H was Damrow Cattle's lender at the time(s) Plaintiffs contracted with Damrow Cattle, the plaintiffs' allegations amount to no

-13-

more than an assertion that FNB-H somehow benefitted from the plaintiffs' contracts with Damrow Cattle.[7]  <u>Haggard Drilling, Inc.</u>, bars this claim.

In <u>Haggard Drilling</u>, a drilling company sued a land owner to recover the value of several wells it had drilled on the land owner's property.  A third party, who was contracting to purchase the real property, agreed to pay the drilling company to dig the wells.  The third party failed to pay for the wells, and the drilling company sued the land owner for unjust enrichment.  The land owner was <u>not</u> obligated to pay for the wells just because the third party had failed to pay.  The court noted "[t]he mere fact that a third person benefits from a contract betwen two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution." <u>Id.</u>, 236 N.W.2d at 846 (internal citation omitted).

Failure to State Fraud Claims

My May 20 orders required that Plaintiffs make their fraud claims (both the fourth claim, for fraud and misrepresentation, including claims of non-disclosure, deceit and concealment and the fifth claim, for fraudulent inducement)

> more definite (in the section of the complaint dealing with each such claim) by stating: (a) what fraudulent acts or omissions are relied upon by the plaintiffs; (b) when those fraudulent acts or omissions took place; (c) who made or is responsible for the fraudulent acts or omissions; and (d) how the fraudulent acts or omissions were communicated to the plaintiffs.

(May 20 orders at ¶ 3.)  This is consistent with the Rule 9(b) requirement that "in all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  In the Eighth Circuit, fraud is not

---

[7]There are no allegations that any of the individual defendants were unjustly enriched.  Accordingly, the complaints fail to state unjust enrichment claims against the individual defendants for this additional reason.

pled with particularity unless the plaintiff identifies the who, what, where, when and how.  United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir.), cert. denied, 540 U.S. 875 (2003) (the Rule 9(b) particularity requirement "demands a higher degree of notice than that required for other claims.  The claim must identify the who, what, where, when and how."); Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) ("'[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.") (quoting Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995)).

The amended complaints fail to meet the particularity requirement. The section of the complaints addressing the fourth and fifth claims for relief amounts to little more than a generalized assertion that the elements of fraud are present.  The required particulars are absent.  Without citing all failings, I note some key omissions.

The defendants are FNB-H and eight of its current or former officers.  Nowhere does the complaint distinguish between the conduct of the nine defendants or state with particularity any specific conduct in which the individual defendants engaged.

The allegations regarding what information was allegedly misrepresented and/or concealed are also deficient.  The allegations state broad, general categories of information, or simply state that "Defendants" misrepresented or concealed "material facts."  Assertions that "Defendants" concealed "the true facts concerning their financing activities relative to [Damrow Cattle]," concealed "material information regarding the [Damrow Cattle] finances," or "intentionally provided commercial information which was inaccurate" are not specific enough to enable Defendants to

prepare a responsive pleading and an overall defense.[8]   Costner, 317 F.3d at 889 (when complaint fails to allege who, what, where, when, and how of fraud claim, the complaint is "not specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." (internal citation omitted)).

Plaintiffs have already been given one chance to replead fraud with particularity and have failed to do so.  They have not requested the opportunity to replead or otherwise responded to the motion to dismiss.[9]  Under these circumstances, I am not required to give Plaintiffs yet another chance to replead before dismissing the fraud claims.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1300, at 270 (leave to replead is properly denied when the district court "believes that it would be futile or when leave to replead has been granted previously but has not produced a satisfactory pleading.").  See also US ex rel Willard v. Humana Health Plan of Texas, Inc., 336 F.3d 375, 387 (5th Cir. 2003) (when plaintiff did not request leave for another amendment, an earlier amendment had failed to remedy the pleading defect and there was no indication that plaintiff would be able to allege the necessary who, what, when, where, and how of asserted fraud, district court did not abuse discretion in dismissing without opportunity for further amendment); Costner, 317 F.3d at 888-89 (upholding dismissal of a claim for failure to plead fraud with the particularity required by Rule 9(b)); Keckhafer v. Prudential Ins. Co. of Am., No. Civ.01-1017, 2002 WL 31185866, *12 n.14 (D. Minn. Oct. 1, 2002) (fraud claim not

---

[8]In 4:05CV3039, filing 39 ¶¶ 100, 101 & 61; in 4:05CV3040, filing 36 ¶¶ 95 & 96 (no parallel to 4:05CV3039's ¶ 61); in 4:05CV3041, filing 36 ¶¶ 95 & 96 (no parallel to 4:05CV3039's ¶ 61); in 4:05CV3042, filing 35 ¶¶ 93 & 94 (no parallel to 4:05CV3039's ¶ 61); in 4:05CV3043, filing 38 ¶¶ 92, 93 & 60; and in 4:05CV3044, filing 40 ¶¶ 93, 94 & 61.

[9]See n.2, supra regarding 4:05CV3040.

-16-

pleaded with Rule 9(b) particularity was dismissed without leave to replead on 12(b)(6) motion to dismiss second amended complaint, as "[h]aving failed on a second attempt to plead fraud with specificity, [the plaintiff] will not be granted further opportunities to amend his pleading.").

## Failure to State Negligent Misrepresentation Claim

The negligent misrepresentation claim is just another fraud claim recast as negligence.   It asserts that "FNB-H and the other defendants negligently misrepresented DCC's and DFF's finances directly and indirectly to Plaintiffs, failed to use reasonable care by making false and misleading representations and otherwise concealing the true facts from Plaintiffs, and failed to exercise reasonable care and competence in supplying true and correct information to Plaintiffs."[10]   Plaintiffs cannot avoid the need to plead fraud with particularity by recharacterizing their fraud claim as negligence.

In addition, most of the negligent misrepresentation/fraud claims are based on misrepresentations made to third parties and relied upon by Plaintiffs.  Nebraska has adopted the definition of negligent misrepresentation found in RESTATEMENT (SECOND) OF TORTS § 552.  Gibb v. Citicorp Mortgage, Inc., 518 N.W.2d 910, 922 (Neb. 1994).  Under that definition, liability for negligent misrepresentation is limited to loss suffered

> (a)   by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

_____

[10]In 4:05CV3039, filing 39 ¶110; in 4:05CV3040, filing 36 ¶105; in 4:05CV3041, filing 36 ¶105; in 4:05CV3042, filing 35 ¶103; in 4:05CV3043, filing 38 ¶102; and in 4:05CV3044, filing 40 ¶103.

> (b)     through reliance upon it in a transaction that he intends the
>          information to influence or knows that the recipient so intends or
>          in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). In this regard, "[i]t is not enough that
the maker merely knows of the ever-present possibility of repetition to anyone, and
the possibility of action in reliance upon it, on the part of anyone to whom it may be
repeated." Id., cmt h.

The complaints before me do not allege that Defendants knew that the
recipient(s) of false information intended to supply that false information to Plaintiffs.
Thus they fail to state a claim as to negligent misrepresentations made to Damrow
Cattle or other third parties that were somehow relied upon by Plaintiffs.
Kouma v. Blue Valley Coop., 576 N.W.2d 854, 856-857 (Neb. App. 1998) (liability
for negligent misrepresentation did not extend to a defendant who misrepresented
information to the plaintiff's son, but not directly to the plaintiff, and who made the
statements without intending that the son would repeat the representations to the
plaintiff).

## Failure to State Claim for Civil Conspiracy

Under Nebraska law, "a 'conspiracy' is not a separate and independent tort in
itself, but, rather, is dependent upon the existence of an underlying tort. Without such
underlying tort, there can be no cause of action for conspiracy to commit the tort."
Hatcher v. Bellevue Volunteer Fire Dep't, 628 N.W.2d 685, 696 (Neb. 2001).
Plaintiffs have failed to state a claim on any of the torts on which the conspiracy
charges are based, and therefore the civil conspiracy claims must be dismissed for
failure to state a claim.

<u>Failure to State a Claim for RICO Violations</u>

The RICO claims are not pled with sufficient particularity, whether judged by the standard of Fed. R. Civ. P. 9(b) or my May 20 order.

Plaintiffs assert three violations of the RICO statutes:  (1) 18 U.S.C. § 1962(b) (prohibiting a person from acquiring or maintaining, through a pattern of racketeering activity, any interest in or control of an enterprise affecting interstate or foreign commerce); (2) 18 U.S.C. § 1962(c) (prohibiting a person associated with an enterprise affecting interstate commerce from conducting or participating in the conduct of such enterprise's affairs through a pattern of racketeering activity); and (3) 18 U.S.C. § 1962(c) (prohibiting conspiracy to violate §§ 1962(b) or 1962(c)).

These offenses have common elements:  "(1) a person who engages in (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct, or control of an enterprise." <u>Calcasieu Marine Nat. Bank v. Grant</u>, 943 F.2d 1453, 1461 (5th Cir. 1991).  <u>See also</u> <u>In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.</u>, 340 F.3d 749, 767 (8th Cir. 2003) (listing elements of a substantive § 1962(c) violation as "(1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity.").  "'Pattern of racketeering activity' is a defined term and requires at least two acts of 'racketeering activity,' the so-called predicate acts . . . ." <u>Salinas v. United States</u>, 522 U.S. 52, 62 (1997) (emphasis added).  With this background, I note the most serious failings in the amended complaints.

Considering the complaints in their entirety, and not just the sections of the complaints specifically setting forth the RICO claims, the complaints do no more than allege that FNB-H and its officers and directors engaged in at least two acts of mail fraud, wire fraud, and financial institution fraud and that these unspecified acts of fraud are the predicate acts required by RICO.  The complaints mention "bank fraud

-19-

by defrauding FNB-O and other acts of bank fraud in its fraudulent loan activities and bankruptcy fraud in the altering of the Morken notes" and further assert that "FNB-H and its officers and directors" have engaged in acts prohibited by the mail fraud, wire fraud, and financial institution fraud statutes (18 U.S.C. §§ 1941, 1343, & 1344).[11]

The Rule 9(b) particularity requirements apply to allegations of fraud when used as predicate acts for RICO claims. Murr Plumbing, Inc. v. Scherer Bros. Fin. Serv. Co., 48 F.3d 1066, 1069 (8th Cir. 1995) (upholding dismissal of RICO claim for failure to plead the circumstances constituting the fraudulent predicate acts with particularity). Nowhere do the complaints assert which specific acts constituted mail fraud, wire fraud, or financial institution fraud, when those acts took place, or who made or is responsible for those acts. A complaint must include these particulars to state a RICO claim. Id. (required particulars include "'the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" (quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), adhered to on reh'g, 710 F.2d 1361 (8th Cir.) (en banc), cert. denied, 464 U.S. 1008 (1983).); see also U.S. v. Costner, 317 F.3d 883, 888 (8th Cir. 2003) (Rule 9(b) requires that a fraud claim "identify who, what, where, when, and how."). In essence, Plaintiffs have assumed that since FNB-H settled two lawsuits involving fraud (a lawsuit with FNB-O and a suit brought by the Minnesota bankruptcy trustee for Morken–who is not a party to the suits before me), there must have been financial institution fraud and there must have been some mail fraud and wire fraud along the way. That is not enough for these plaintiffs to state a RICO claim.

In addition, all of the RICO allegations in the complaint are based "upon information and belief." In the Eighth Circuit, a RICO plaintiff is required to state the

---

[11]In 4:05CV3039, filing 39 ¶¶ 125-126; in 4:05CV3040, filing 36 ¶¶ 120-121; in 4:05CV3041, filing 36 ¶¶ 120-121; in 4:05CV3042, filing 35 ¶¶ 118-119; in 4:05CV3043, filing 38 ¶¶ 117-118; and in 4:05CV3044, filing 40 ¶¶ 118-119.

source of the information and the reasons for the belief.  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997).  The plaintiffs in the cases before me have not done so, with the limited exception of explaining the factual background of the altering of the Morken notes.

Remember that the RICO offenses require "(1) a person who engages in (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct, or control of an enterprise."  Given these elements, a complaint fails to state a claim for RICO violations if it does not clearly specify the person and the enterprise with respect to which that person acts.  The complaints do not separate the "person" and the "enterprise."  They allege that FNB-H is both a "person" and an "enterprise".  They allege multiple other enterprises–DCC, DFF, CFI and CFF–but do not specify which enterprise was acted upon via the predicate acts constituting racketeering activity.

## III.  CONCLUSION

My May 20 order directed Plaintiffs to amend their complaints to make all claims other than the civil conspiracy claims more definite and certain.  The complaints did not comply with that order.  For that reason, those claims will be dismissed pursuant to Rule 41(b).  Alternatively, those claims are dismissed for failure to state a claim pursuant to Rule 12(b)(6) and, as to the fraud claims, Rule 9(b).  Since the underlying state law claims are dismissed, the civil conspiracy claim also fails to state a claim and is dismissed pursuant to Rule 12(b)(6).

IT IS ORDERED:

1.      The following claims are dismissed pursuant to Rule 41(b) for noncompliance with the May 20 orders:  first claim (breach of verbal contract); second claim (breach of written contract); third claim (unjust enrichment); fourth  claim (fraud and misrepresentation, including claims of non-disclosure, deceit and concealment); fifth claim (fraudulent inducement); sixth claim (negligence); and eighth claim (violations of RICO);

2.      Alternatively, the claims listed in the preceding paragraph are dismissed for failure to state a claim pursuant to Rule 12(b)(6) and, as to the fraud claims (which include the negligence claim as it is wholly based on fraud), Rule 9(b));

3.      The seventh claim (civil conspiracy) is dismissed for failure to state a claim pursuant to Rule 12(b)(6);

4.      The Clerk of the Court is directed to file this memorandum and order in each of the individual cases reflected in the joint caption.  Despite the fact that I have used a joint caption for this memorandum and order, and unless otherwise directed or permitted, counsel shall file any subsequent filings using the single caption appropriate to their individual cases; and

5.      Judgments shall be entered by separate order.

February 3, 2006.                         BY THE COURT:

                                          *s/Richard G. Kopf*
                                          United States District Judge